# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **SMHC LLC,** | Case No. 14-45579 |
| Debtor. | Hon. Marci B. McIvor |
| _____/ | |
| In re: | Chapter 11 |
| **VALUE HOMES, L.L.C.,** | Case No. 14-45581 |
| Debtor. | Hon. Marci B. McIvor |
| _____/ | |

## NOTICE OF FILING OF
## DECLARATION OF RALPH SCOFIELD IN SUPPORT OF
## DEBTORS' CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

Debtors, SMHC LLC and Value Homes, LLC, hereby submit the Declaration of Ralph Scofield in Support of Debtors' Chapter 11 Petitions and First Day Motions.

Dated: April 1, 2014

Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**
Proposed Counsel for Debtor and
Debtor-in-Possession

By: /s/Jason W. Bank
    Jason W. Bank (P54447)
500 Woodward Ave., Suite 2500
Detroit, MI 48226
(313) 961-0200
jbank@kerr-russell.com

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **SMHC LLC,** | Case No. 14- |
| Debtor. | Hon. |
| _____/ | |
| In re: | Chapter 11 |
| **VALUE HOMES, L.L.C.,** | Case No. 14- |
| Debtor. | Hon. |
| _____/ | |

## DECLARATION OF RALPH SCOFIELD IN SUPPORT OF DEBTORS' CHAPTER 11 PETITIONS AND FIRST DAY MOTIONS

Ralph Scofield, for his *Declaration of Ralph Scofield in Support of Debtors' Chapter 11 Petitions and First Day Motions*, states as follows:

1. I am the managing member of SMHC LLC ("SMHC") and Value Homes, L.L.C. ("Value Homes") (collectively, "Debtors").

2. I have signed and authorized the filing of Voluntary Petitions (the "Petitions") under Chapter 11 of the United States Bankruptcy Code (the "Code") for SMHC and Value Homes.

3. I submit this Declaration in support of the relief that the Debtors have requested in each of the First Day Motions filed shortly after the commencement of these Chapter 11 cases (collective, the "First Day Motions").

{36550/1/DT839477.DOCX;3}

4. Except as otherwise indicated, I am familiar with each of the matters set forth below based on (a) my personal knowledge, (b) my review of the Debtors' relevant business records, (c) information supplied to me by the others at Debtors' business, or (d) my opinion based upon my knowledge of the Debtors' operations and financial condition.

5. If called, I would testify competently to the facts set forth herein.

6. This Declaration describes the business of the Debtors, the circumstances surrounding the commencement of the Debtors' Chapter 11 cases and the relevant facts supporting the First Day Motions. Nothing herein is intended to be or should be construed as an admission of the validity of claims, security interests, liens, contractual defaults or any rights that may be asserted against the Debtors. The statements made herein regarding debts, obligations, default sand liens represent only assertions made by creditors to the Debtors or that the Debtors anticipate will be made by creditors and does not constitute a belief on the part of the Debtor that these assertions are true and/or accurate.

## OVERVIEW OF DEBTORS

7. SMHC LLC is a Michigan limited liability company with its principal office in Clyde, Michigan.

8. SMHC owns and operates eight manufactured home parks in the southern half of Michigan's Lower Peninsula (collectively, the "SMHC Properties"):

   a. Swartz Creek Estates (Swartz Creek, MI)
   b. South Valley Estates (Charter Township of Flint, MI)
   c. Loon Lake (Fenton Township, MI)
   d. East Bay (Fenton Township, MI)
   e. Sugar Tree (Caro, MI)
   f. Fawn Lake Estates (Walled Lake, MI)
   g. North Bay Harbor Club (Deerfield Township, MI)
   h. Lake Fenton (Fenton Township, MI)

9. SMHC has 20 employees: 7 full-time employees and 13 part-time employees.

10. SMHC enters into various Manufactured Home Site Lease Agreements and rents the land to individuals who purchase manufactured homes, and in the past, generally financed them with third party lenders.

11. The Ralph Scofield Living Trust holds one-hundred (100%) percent of the membership interests in SMHC.

12. Value Homes, L.L.C. is a Michigan limited liability company with its principal offices located in Clyde, Michigan.

13. Value Homes buys, refurbishes and sells manufactured homes in the mobile home parks operated by SMHC. Many of the manufactured homes that Value Homes purchases are homes where owners have defaulted in payments to their third party secured lenders. Value Homes resells the homes to new owners who keep the homes in the SMHC Properties and thus maintain the going concern value of the various properties.

14. Value Homes has no employees.

15. The Ralph Scofield Living Trust holds ninety (90%) percent of the membership interests in Value Homes and Steven Combs holds ten (10%) percent of the membership interests in Value Homes.

16. Talmer Bank and Trust, successor to Citizens First ("Talmer"), asserts a claim against the SMHC in the amount of $15,214,072.93 (the "SMHC Claim") and asserts that the SMHC Claim is secured by Mortgages against each of the SMHC Properties.

17. Talmer asserts a claim against Value Homes in the amount of $2,994,171.60 (the "Value Homes Claim") and asserts that the Value Homes Claim is secured by security interests in used mobile homes, and contract receivables.

18. Talmer asserts that Ralph Scofield has personally guaranteed the indebtedness owed by SMHC and Value Homes. Talmer further asserts that the

Value Homes Claim and SMHC are subject to cross-collaterization/cross-default clauses.

## EVENTS LEADING TO CHAPTER 11 FILING

19. Debtors' financial problems are a direct result of the economic collapse that the State of Michigan experienced over the past decade, and in particular, the significant depreciation in real estate values.

20. The SMHC Properties were appraised for $26.3 million in appraisals completed prior to 2008. In 2012, the SMHC Properties appraised for $15,225,000. Today, the condition of the SMHC Properties is similar to their condition in 2012. Property values have declined by over forty (40%) percent.

21. In addition, over the past several years, the manufactured homes in SMHC's parks have experienced a significant amount of financial distress due to homeowners being unable to sell because potential buyers cannot obtain financing. Thus, the homeowners often default on their loan agreements with third party lenders and abandon the homes to foreclosure. As a result, occupancy rates have declined at the various SMHC Properties.

22. As a result of the defaults, third party lenders have repossessed and continue to repossess large numbers of manufactured homes and offer to sell the homes to buyers who would remove the homes from the SMHC Properties.

23. Because of industry wide high default rates, most third party lenders have ceased offering manufactured home loans, and loans for pre-owned homes are almost non-existent. Residents who need to sell their homes for cash usually have two choices: sell to a broker/buyer who will tow it out of the SMHC park or sell to Value Homes.

24. In order to preserve the going concern value of each of the parks, Value Homes must purchase the manufactured homes for cash, refurbish them and resell them with low down payments in order to ensure that the properties do not suffer a substantial decrease in vacancy rates that would be detrimental to the viability of the entire park. This has caused severe cash flow problems for the companies.

25. In May 2013, the SMHC Claim and Value Homes Claim matured and the SMHC Claim and Value Homes Claim became immediately due and payable.

26. Due to reduced occupancy rates, depreciated real estate values, and cash flow requirements, Debtors are unable to (a) service the SMHC Claim and the Value Homes Claim or (b) obtain alternative financing to satisfy or substantially pay down the SMHC Claim and Value Homes Claim.

27. Debtors intend to file a plan of reorganization to restructure the indebtedness owed to Talmer based upon the current economic realities. Debtors

intend to continue its negotiations with Talmer (which commenced pre-petition) in order to achieve a consensual plan process.

## FACTS IN SUPPORT OF FIRST DAY MOTIONS

28. Concurrently with the filing of these Chapter 11 cases, the Debtors have filed certain First Day Motions. I have reviewed the First Day Motions and believe that the relief sought in each of the First Day Motions is necessary to enable the Debtors to operate in Chapter 11 with minimal disruption to the businesses or loss of revenue.

## THE CASH COLLATERAL MOTION

29. The Debtors have filed a First Day Motion for Entry of an Interim and Final Order Authorizing Debtors to Use Cash Collateral and Providing Adequate Protection and Other Relief (the "Cash Collateral Motion"). I prepared the Budget attached to the Cash Collateral Motion, which outlines anticipated revenues and expenses of the Debtors over the next three weeks. The Budget demonstrates that the Debtors will be cash flow positive during the time period reflected by the Budget.

30. It is necessary for the Debtors to use cash collateral and make the expenditures set forth in the Budget in order to meet necessary and critical operating expenses.

31. If the Cash Collateral Motion is not granted, and the Debtors are not authorized to make the expenditures set forth in the Budget attached to the Cash Collateral Motion, the Debtors' businesses would suffer irreparable harm and would not be able to sustain their operations.

## JOINT ADMINISTRATION MOTION

32. Debtors have filed a Motion for Order Authorizing Joint Administration of Cases Pursuant to Fed R. Bankr. P. 1015 ("Joint Administration Motion").

33. The Debtors anticipate filing a combined plan and anticipate that any motions or documents filed will impact upon both Debtors.

34. Joint administration of the Chapter 11 cases will prevent the need of interested parties to prepare and file duplicative pleadings in both cases and reduce administrative burdens placed on the Debtors, creditors and this Court.

35. Neither of the Debtors are publicly traded entities.

36. In January 2010, Value Homes, L.L.C. entered into a Site Rent Agreement with Scofield Management (predecessor of SMHC). Under this Agreement, Value Homes pays site rent to SMHC for manufactured home sites that it occupies until the date that a retail home purchaser begins paying the site rent.

{36550/1/DT839477.DOCX;3}    8

14-45579-mbm    Doc 10    Filed 04/01/14    Entered 04/01/14 15:16:50    Page 9 of 10

37. In addition, Value Homes pays SMHC monthly fees for the use of employees, facilities and certain equipment owned by SMHC based upon the following formulas:

- Value Homes - Inventory x 1-1/2% divided by 12

- Value Homes - Contracts Receivable x 1-1/2% divided by 12

- Value Homes – Homes Sales - $500 each

38. Currently, Value Homes owes SMHC $1,425,242.96 arising from indebtedness owed from the aforementioned transactions.

39. In the approximate year prior to the Petition Date, there were $109,000 in advances from SMHC to Value Homes in addition to Value Homes not paying SMHC for all of the services SMHC provided.

## CONCLUSION

40. For all of the foregoing reasons, I respectfully submit that the relief sought in the First Day Motions is necessary and appropriate.

Further deponent says not.

Dated: April 1, 2014

Ralph Scofield